Arch Morton v. Commissioner.
Morton v. Commissioner
Docket No. 13137.
United States Tax Court
1948 Tax Ct. Memo LEXIS 60; 7 T.C.M. (CCH) 793; T.C.M. (RIA) 48215; October 25, 1948
*60 Held, upon the facts, that a business partnership existed between petitioner and his wife within the purview of the Federal revenue law during the tax years. John C. Evans, Esq., and Frank W. Coolidge, Esq., 1026 Dime Bldg., Detroit, Mich., for the petitioner. Howard M. Kohn, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The respondent determined deficiencies in petitioner's income and victory tax for the year ended December 31, 1943, and in his income tax for the year ended December 31, 1944, as follows: 1943
$14,010.05
1944
10,173.35
Due to the forgiveness feature of the Current Tax Payment Act of 1943 the calendar year 1942 is also involved as measuring in part *61 the tax liability for the calendar year 1943. Certain adjustments made by respondent to petitioner's reported net income for the years 1942 to 1944, inclusive, are not contested. The only question presented by this proceeding is whether petitioner and his wife were partners for Federal tax purposes during the years in question. The tax returns were filed with the collector of internal revenue for the district of Michigan at Detroit. Findings of Fact Petitioner is an individual residing in Ferndale, Michigan. Both petitioner and his wife, Margaret Morton, were born in Ontario, Canada. They were married at St. Catherine's, Ontario, in 1926. Petitioner, at the age of 13, began work as an apprentice in a machine shop in St. Catherine's. He worked there until the time of his marriage to Margaret. After their marriage petitioner and Margaret moved to Warren, Ohio, where petitioner was employed in a machine shop as a machinist. In 1927 petitioner's employment as a machinist took them to Salem, Ohio. Subsequently, they moved first to Elwood City, Pennsylvania, and then to Meadville, Pennsylvania, where petitioner again was employed as a machinist. In 1934 petitioner and Margaret moved *62 to Ferndale, Michigan, their present home. From 1934 to 1939 petitioner worked as a machinist for various manufacturing and tool making concerns on an hourly wage basis. In 1935 petitioner and Margaret jointly purchased for $1,750 a home at 575 East Drayton Street, in Ferndale. The down payment of $175 was borrowed by them on a life insurance policy. The balance of the purchase price was payable in small monthly installments. Petitioner and Margaret still live in this home. Because of the lack of steady employment, petitioner found that working for others as a machinist was unsatisfactory. Prior to 1939 he and Margaret had discussed going into a service station business together. Their plan was that petitioner would operate the repair and service end of the business, while Margaret was to keep the books and take charge of the lunch room which they intended to have in conjunction with the service station. Early in 1939 petitioner and Margaret were approached by a neighbor, Glen Wright, who was part owner of Pratt-Wright Screw Product Company, for the purpose of urging them to establish a machine shop of their own. He promised to give them work from his company. He introduced them *63 to Albert B. Mongeon, who was a partner in the Brass Forgings Company of Ferndale. The latter also promised them work from that concern. Petitioner and Margaret, after discussing and considering the matter, decided to establish the type of business above suggested. They determined that petitioner would have charge of the operation of the machines and that Margaret would have charge of the administrative end of the business. Early in 1939 petitioner quit his job and set up a small machine shop in his garage and basement. Petitioner and Margaret had no assets with which to finance the new venture. They were able, however, to borrow $648 from a local bank. Such loan was made upon a note which was signed by petitioner, Margaret, and two acquaintances as co-signers or guarantors. With this money petitioner purchased secondhand machines, consisting of a lathe, mill, drill, press, shaper, and metal saw. These machines were installed in the garage and basement. The note was subsequently repaid from the earnings of the business. The business was started in the name of "A. Morton". The firm was located in the home until 1942 when a new building was erected three blocks away. Thereafter *64 and through the years in question the business was known as the "Morton Machine Works." Payment for the new building was made out of their then joint checking account. Petitioner's business experience and formal education were limited. He quit school at the age of 13. His only skill was that of a machinist. Margaret, in contrast, was graduated from high school and matriculated in a post-graduate business course for one year, which included bookkeeping. Thereafter she completed a year of normal college work and taught elementary school in Chippewa, Ontario. A year prior to her marriage to petitioner she worked in a retail store in St. Catherine's doing clerical and bookkeeping work. After her marriage to petitioner, when they moved to Salem, Ohio, she worked for one year in a dry cleaning establishment as a general bookkeeper. Beginning in 1939 Margaret aided petitioner substantially in the operation of the business. During that year and through the taxable years in question she has had full charge and responsibility for all of the bookkeeping, inventory, supply purchasing, collection of accounts, preparation and payment of payrolls, preparation and filing of tax returns and preparation *65 and submission of reports required by the Government. She also picked up parts to be machined and returned the same to the customer when completed. At times she operated the drill press and metal saw - simple operations which she was taught to do by petitioner. At times she suggested changes and improvements in machine operations and advised and counseled in decisions and matters of business policy. From the inception of the business petitioner has had charge and direction of all the mechanical operations. He has selected and purchased all machines and has either operated or directed and supervised all machinery operations. During the first year of business no bank account was maintained. All receipts were handled in cash by Margaret and all payments were made by her either by cash or by purchasing cashiers' checks or money orders. In January 1940 a commercial checking account was started in a local bank in the name of "A. or Margaret Morton". Either petitioner or Margaret was authorized to sign checks on that account. After the establishment of that bank account all receipts and disbursements of the business were handled through it. In January 1943 petitioner and Margaret transferred *66 that account to another bank, which account was taken out in the name of "Morton Machine Works." Either petitioner or Margaret was authorized to sign checks on this account. An analysis of all checks drawn on such bank accounts shows the following for the years in question; No. of
Signed by
Year
Checks
Petitioner
Margaret
1942
601
None
601
1943
1,035
79
956
1944
1,048
404
644 The above were the only bank accounts the petitioner had and were the only checks drawn. The greater portion of these checks was drawn for the business purposes. By 1939 petitioner and Margaret had three children who were 11, 8 and 5 years of age respectively. Prior to 1942, due to the fact that the business was located in the home, Margaret was able to perform both her household duties and tasks connected with the operation of the business. As the children grew older they assisted her materially in doing household chores. In 1942 when the business was moved to its new location, she arose early in the morning for the purpose of doing her house work before going to her work at the business office. Many times she worked at the new building on weekends or in the evenings *67 so that she could take time on Monday mornings or other weekday mornings to do house work. In 1943 public accountants were hired to prepare a set of books for the firm. They wrote in all the account headings and showed Margaret the bookkeeping entries which should be made. The accountants set up one capital account in the name of "A. Morton and M. Morton". Likewise, there was set up a joint drawing account of "A. Morton and M. Morton". In June 1943 a girl still in high school was hired to work in the office under Margaret's supervision. She worked full time until September, 1943. From September until June 1944, she worked approximately two hours after school and a half day on Saturdays. After June 1944 she began full time employment. The nature of her work during all this time was general clerical and office work, such as typing and filing. Margaret made up all income tax returns for petitioner prior to 1942. In 1939 and 1940 returns were filed in the name of "A. Morton." For 1941 a return was made in the joint names of "Arch and Margaret Morton". In 1942, with the help of an accountant, Margaret filed for the first time a partnership return of income. Prior to that time she was *68 not aware that a partnership was required to file such return. On the return for 1942 and on the returns for 1943 and 1944 it was stated that the partnership business was organized on "January 1, 1942". Petitioner and Margaret filed separate returns reporting their income as individual partners during each of the years in question. In February 1943 an assumed name certificate indicating that petitioner and Margaret were partners was filed with the county clerk of Oakland, County, Michigan. The various tax returns filed indicate the growth of the busines as follows. Year
Gross Sales
Net Income
1939
$ 5,076.39
$ 3,277.57
1940
7,114.98
4,402.66
1941
19,570.31
7,844.40
1942
49,575.21
22,131.45
1943
74,104.97
24,483.20
1944
89,758.31
33,130.82
In the beginning no employees were hired in the operation of the machines. Subsequently, while still operating in the Morton home, approximately eight were hired. After removal of the business to the new location there continued to be roughly eight employees. In 1939 the firm had two customers: Brass Forgings Company and Pratt-Wright Screw Product Company. After 1939 and continuing through the taxable *69 years, Morton Machine Works did some work for Brass Forgings Company each year. During 1942, 1943 and 1944 most of the firm's business was with Sewick Tool Company in addition to several minor accounts. In his deficiency notice for the taxable year 1944 respondent explained the adjustment to petitioner's income as follows: "It is held that the entire income derived from operations of Morton Machine Works during the year 1944 is taxable to you under Section 22 (a) of the Internal Revenue Code." The same explanation was given for the taxable years 1942 and 1943. In each of the taxable years in question respondent allowed a deduction of $900 as salary for Margaret. She was paid no salary for her services. Opinion It is well estblished that a wife and husband may form a partnership for tax as for other purposes "if she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things". Commissioner v. Tower, 327 U.S. 280; see also Lusthaus v. Commissioner, 327 U.S. 293. The respondent urges that petitioner's *70 wife, Margaret, did none of those things so far as the business here involved is concerned and, therefore, that she was not a partner for Federal tax purposes during the years in question. We do not agree with this contention. In our opinion, contrary to respondent's position, Margaret's services to the business before and during the years involved were managerial in character and were also vital additional services. The respondent admits that she performed services in the firm from its beginning and through the years in question, but he argues that they constituted no "more than a routine clerical function". The record is clear that Margaret, until June 1943, was the sole person performing the administrative work connected with the business. After that date, in conjunction with her other office duties, she supervised a high school girl who, both on a part time and full time basis, performed certain clerical tasks, such as typing and filing. From the creation of the business Margaret kept the books. It is true, as respondent points out, that these were very elementary in nature at the start of the enterprise, but her bookkeeping method, with the aid of auditors who helped her *71 set up new books in 1942, improved and became more complex as the business grew. Petitioner, so far as the evidence shows, knew nothing of bookkeeping or accounting and left this job entirely in Margaret's hands. Margaret also took inventory, purchased supplies, collected accounts, prepared the payrolls, paid the employees, prepared tax returns and governmental reports, such as Social Security forms and unemployment compensation and withholding tax forms. In addition, she picked up parts from customers which were to be machined by petitioner in the shop and delivered such parts to them when completed; she attended the telephone, and at times operated the drill press and metal saws. Some indication of the extent of her services can be seen from the record of the checks, most of which were written for business purposes. In 1942, 601 checks were written on their joint account, every one of which was signed by Margaret. In 1943 and 1944, 2,083 checks were drawn on the firm's account, of which she signed 1,600. In our opinion the above services were indispensable to the successful operation of the business during the years in question and constituted services which were managerial as *72 well as services that were vital and additional to those performed by petitioner. We are not without precedent in determining that duties such as outlined above constitute both vital and additional services and on that account rendered Margaret's status that of a partner for all purposes. See Weizer v. Commissioner, 165 Fed. (2d) 772. The Court there outlined the services which it deemd "vital and additional" as follows: "* * * Florence Weizer [taxpayer's wife] worked in the office. She handled telephone sales and sales consummated by letter. Either she, or the office girl working under her direction and supervision, handled the billing, slow accounts, deposits, the bookkeeping, invoices, checking and payment of bills, statements of account, preparation of financial statements, the incoming and outgoing correspondence, errors, complaints and allowances, checking of freight cars on the firm's rail siding and demurrage, payroll records and payments, preparation of formal bids, purchase of office supplies and printing and reconciliation of bank statements. She averaged from five to six hours a day in the office and frequently spent evenings, and occasionally Sunday, *73 at home working at a desk which she kept there with a typewriter and firm stationery. Mr. and Mrs. Weizer jointly passed on the charging off of worthless accounts. * * *" In that case, as in this one, a partnership return was filed for the first time in the year for which the deficiency was determined. Moreover, in that case, as here, there was no written partnership agreement during the taxable year. The Court held, however, that there was a valid partnership for tax purposes during the year in question. It is true in the case at bar that during the years in question Margaret had to care for three children who, in 1942, were 14, 11 and 8 years age. She had no help at home during this time to attend to either the children or her other household duties. Notwithstanding this fact, however, the record shows that Margaret was able to perform full time duties in the activities of the business in addition to taking care of her household work. The record also indicates that as the children grew older they were able to assist their mother materially in the housework. In view of the above we hold there was a valid partnership for Federal tax purposes between petitioner and his wife during *74 the years in question and that only one-half of the partnership income is taxable to the petitioner. It follows that respondent erred in his determination. Decision will be entered under Rule 50.